UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MORGAN PERRY, *et al.*,

    Plaintiffs,

vs.

KRIEGER BEARD SERVICES, LLC, *et al*.,

    Defendants.

Case No. 3:17-cv-161

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

### REPORT AND RECOMMENDATION[1] THAT PLAINTIFF AUNSHAWN HENDERSON'S MOTION FOR DEFAULT JUDGMENT (DOC. 125) BE DENIED WITHOUT PREJUDICE TO REFILE A SUPPLEMENTAL MOTION SUPPORTED BY EVIDENCE OF DAMAGES

---

This is a consolidated civil case in which Plaintiffs assert, *inter alia*, claims for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiff Morgan Perry originally filed this action on May 8, 2017, on behalf of himself and others similarly situated, seeking overtime pay from, among other Defendants, Krieger Beard Services, LLC ("KBS"). Doc. 1. Plaintiff Aunshawn Henderson filed a separate civil action in this Court on January 8, 2018 seeking similar relief under the FLSA against KBS and other Defendants. *See* Class and Collective Action Complaint, *Henderson v. Krieger Beard Services, LLC*, No. 3:18-cv-6 (S.D. Ohio Jan. 8, 2018), ECF No. 1 (hereinafter "*Henderson*, No. 3:18-cv-6, at doc. 1"). Henderson's case was consolidated with this action on July 2, 2018. Doc. 79.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

## I.

As set forth by Henderson in his complaint, Defendant KBS is a business providing satellite television installation services with a principal place of business in Troy, Miami County, Ohio. *See Henderson*, No. 3:18-cv-6, at doc. 1 at PageID 2. Henderson worked for Defendant KBS between June 2016 and May 2017 installing satellite television services throughout the states of Indiana and Illinois. *Id*. at PageID 2-3.

Although Henderson executed an "independent contractor" agreement with KBS at or near the beginning of his employment with KBS, he contends that he was KBS's employee as evidenced by, *inter alia*, the amount of control KBS exerted over the work he performed. *Id*. at PageID 3. For example, Henderson alleges that, during his employment, KBS: assigned all of the jobs he performed; specified the type of work to be performed; determined all of the equipment he needed for each job; dictated the timeframe in which all work was to be completed; required him to wear a uniform; demanded that he attend KBS trainings; required attendance at KBS training sessions; required that he check-in with a KBS supervisor each morning at 7:00 a.m.; and demanded that he report to his first assignment by 8:00 a.m. each day. *Id*. at PageID 4-5.

During his employment, Henderson alleges that he regularly worked fifty (50) hours or more each workweek. *Id*. at PageID 5. In addition, Henderson alleges that KBS regularly made inappropriate deductions from his pay for certain "capital costs." *Id*. For example, Henderson contends that his pay was deducted to cover damage claims by customers, for his uniform, and for installations that were allegedly performed improperly. *Id*. at PageID 5-6.

In his complaint, Henderson asserts claims seeking to recover the allegedly inappropriate deductions from his pay, unpaid wages including overtime, liquidated damages, and attorney's fees under the FLSA and corresponding Indiana and Illinois wage statutes. *Id*. at PageID 11-14.

On September 27, 2019, the Clerk entered a default against Defendant KBS in the consolidated case. Doc. 123. Default has not been entered against any of the other Defendants. *Id*. The circumstances regarding KDS's default were detailed in a decision previously issued by the undersigned on September 5, 2019. Doc. 118. In summary, KBS failed to defend this action by retaining counsel to represent it[2] and by failing to respond to discovery requests. *Id*. Notably, KBS offered no objection to the entry of default against it in this consolidated case.

## II.

Now before the Court is Plaintiff Henderson's motion for default judgment against Defendant KBS. Doc. 125. No memorandum in opposition has been filed and the time for doing so has expired. *See* S.D. Ohio Civ. R. 7.2(a)(2). Accordingly, Henderson's motion for default judgment is ripe for decision.

A party is in default when that party fails to "plead or otherwise defend" an action. Fed. R. Civ. P. 55(a). Once default is shown by affidavit or otherwise, "the clerk must enter the party's default." *Id*. Following the entry of default against a defaulting party, and where "plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk -- on the plaintiff's request, with an affidavit showing the amount due -- must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Otherwise, such as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defaulting defendant admits liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). Default, however, does not establish damages and, instead, "the amount of damages must be proved." *Id*. Thus, "[e]ven when a default judgment is warranted

---

[2] As a business entity, KBS cannot proceed *pro se* and can only participate in its defense in this case through counsel. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993).

based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true" and, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Here, in support of his motion for default judgment, Henderson presents detailed affidavits with supporting documentary evidence from his attorneys to support the amount of attorney's fees and costs incurred in litigating this case. *See* docs. 125-1, 125-2, 125-3. There is not, however, similar detailed affidavits and supporting documentation regarding Henderson's damages. Instead, the only testimony cited from Henderson that is part of the record in this case is an affidavit Henderson submitted in support of conditional class certification. Doc. 15-3 at PageID 125-27. In that affidavit, Henderson estimates working eight (8) to ten (10) hours a day, five (5) to six (6) days a week. Doc. 15-3 at PageID 127. The undersigned finds Henderson's vague testimony in this regard to be insufficient proof of the number of hours worked during an average workweek.[3]

Even assuming, *arguendo*, that Henderson has appropriately evidenced the average number of hours worked each workweek, he presents no evidence -- by affidavit or by properly

---

[3] An employee seeking unpaid overtime or unpaid minimum wage under the FLSA bears the "burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Because employers are chargeable with maintaining "proper records of wages, hours and other conditions and practices of employment" and are "in [the] position to know and to produce the most probative facts concerning the nature and amount of work performed[,]" the Supreme Court has set forth a "proper and fair standard" in which an employee can "meet . . . his [or her] burden of proof." *Id*. at 687. Where, as the case may be here, the employer fails to maintain adequate and accurate records, "an employee has carried out his [or her] burden if he [or she] proves that he [or she] has in fact performed work for which he [or she] was improperly compensated and if he [or she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. Thereafter, "[t]he burden . . . shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687-88. The employer's failure in this regard allows the court to "then award damages to the employee, even though the result be only approximate." *Id*. at 688.

authenticated supporting documentary evidence – showing, *inter alia*, his rate of pay, the amounts he was actually paid, or of each allegedly inappropriate pay deduction upon which the Court can determine his damages with reasonable certainty.  *See* doc. 125 at PageID 3050-51.  There being insufficient proof showing the number of hours Henderson worked each workweek, and there being no evidence of record establishing, *inter alia*, Henderson's rate of pay, the amounts actually paid each workweek, or the actual amounts inappropriately deducted from his paycheck for "capital expenditures," the undersigned cannot determine damages with reasonable certainty and, therefore, default judgment against KBS is not appropriate at this time.

### III.

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff Aunshawn Henderson's motion for default judgment (doc. 125) be **DENIED WITHOUT PREJUDICE** to refile with evidence supporting his claim for damages.

Date:  April 15, 2020                              s/ Michael J. Newman
                                                              Michael J. Newman
                                                              United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).