UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MORGAN PERRY, *et al.*,

    Plaintiffs,

vs.

KRIEGER BEARD
SERVICES, LLC, *et al.*,

    Defendants.

Case No. 3:17-cv-161

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) PLAINTIFF AUNSHAWN HENDERSON'S SECOND MOTION FOR DEFAULT JUDGMENT (DOC. 133) BE GRANTED; (2) JUDGMENT BE ENTERED AGAINST DEFENDANT KRIEGER BEARD SERVICES, LLC AS FOLLOWS: PLAINTIFF BE AWARDED $39,280.00 IN DAMAGES; AND PLAINTIFF'S COUNSEL BE AWARDED $56,507.05 IN ATTORNEY'S FEES AND $1,745.85 IN COSTS; AND (3) THE CLERK CLARIFY THAT HENDERSON'S CLAIMS (INITIALLY FILED IN CASE NO. 3:18-cv-006) ARE RESOLVED, AND THUS NO LONGER PART OF THIS LITIGATION.**

---

Plaintiff Aunshawn Henderson -- an Indiana resident, who worked in both Indiana and Illinois -- filed a civil action in this Court on January 8, 2018 asserting claims against Defendant Krieger Beard Services, LLC ("KBS"), an Ohio entity, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and corresponding Indiana and Illinois wage statutes. *See* Class and Collective Action Complaint, *Henderson v. Krieger Beard Services, LLC*, No. 3:18-cv-6 (S.D. Ohio Jan. 8, 2018), ECF No. 1. Jurisdiction is premised on both the federal question and diversity doctrines. *See id.* On July 2, 2018, Henderson's case (District Court Case No. 3:18-cv-006) was consolidated with this civil case (Case No. 3:17-cv-161) filed, on May 8, 2017, by Plaintiff Morgan Perry, on behalf of himself and others similarly situated, seeking overtime pay

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

1

from, among others, KBS.  Docs. 1, 79.  Now before the Court is one matter only: Henderson's claim against KBS.

Specifically, this case is presently before the Court on Henderson's second motion for a default judgment against KBS.  Doc. 133.  On May 5, 2020, the Court denied Plaintiff Henderson's initial motion for a default judgment without prejudice because Plaintiff's motion was not supported by evidence of damages.  Doc. 129.  No memorandum in opposition to either of Plaintiff's motions was filed and the time for doing so has expired.  *See* S.D. Ohio Civ. R. 7.2(a)(2).  Accordingly, Henderson's second motion for a default judgment (doc. 133) is now ripe for decision.

## I.

In a decision previously issued by the undersigned on April 15, 2020, Henderson's allegations against KBS were set forth in detail as follows:

> … Defendant KBS is a business providing satellite television installation services with a principal place of business in Troy, Miami County, Ohio.  *See Henderson*, No. 3:18-cv-6, at doc. 1 at PageID 2.  Henderson worked for Defendant KBS between June 2016 and May 2017 installing satellite television services throughout the states of Indiana and Illinois.  *Id*. at PageID 2-3.
>
> Although Henderson executed an "independent contractor" agreement with KBS at or near the beginning of his employment with KBS, he contends that he was KBS's employee as evidenced by, *inter alia*, the amount of control KBS exerted over the work he performed.  *Id*. at PageID 3.  For example, Henderson alleges that, during his employment, KBS: assigned all of the jobs he performed; specified the type of work to be performed; determined all of the equipment he needed for each job; dictated the timeframe in which all work was to be completed; required him to wear a uniform; demanded that he attend KBS trainings; required attendance at KBS training sessions; required that he check-in with a KBS supervisor each morning at 7:00 a.m.; and demanded that he report to his first assignment by 8:00 a.m. each day.  *Id*. at PageID 4-5.

> During his employment, Henderson alleges that he regularly worked fifty (50) hours or more each workweek. *Id.* at PageID 5. In addition, Henderson alleges that KBS regularly made inappropriate deductions from his pay for certain "capital costs." *Id.* For example, Henderson contends that his pay was deducted to cover damage claims by customers, for his uniform, and for installations that were allegedly performed improperly. *Id.* at PageID 5-6.
>
> In his complaint, Henderson asserts claims seeking to recover the allegedly inappropriate deductions from his pay, unpaid wages including overtime, liquidated damages, and attorney's fees under the FLSA and corresponding Indiana and Illinois wage statutes. *Id.* at PageID 11-14.

Doc. 127.

## II.

A party is in default when that party fails to "plead or otherwise defend" an action. Fed. R. Civ. P. 55(a). Once default is shown by affidavit or otherwise, "the clerk must enter the party's default." *Id.* Following the entry of default against a defaulting party, and where "plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk -- on the plaintiff's request, with an affidavit showing the amount due -- must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Otherwise, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Although a defaulting defendant admits liability, default does not establish damages and, instead, "the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). Thus, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true" and, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.

3

1999)). However, "a court need not conduct an evidentiary hearing where damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *United States v. Parker-Billingsley*, No. 3:14-CV-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015), *report and recommendation adopted*, No. 3:14-CV-307, 2015 WL 4540181 (S.D. Ohio Mar. 3, 2015) (citing *Wilson v. D & N Masonry, Inc.,* No. 1:12–cv–922, 2014 WL 30016, at *1 (S.D. Ohio Jan. 3, 2014)).

Here, KBS is in default because it failed to defend this action by retaining counsel to represent it[2] and also failed to respond to Plaintiff's discovery requests. *See* doc. 118. A Show Cause Order was filed regarding both issues on July 8, 2019 -- notifying KBS that a default could issue if no response were filed, *see* doc. 114 -- and KBS filed nothing in response. As a result, the Clerk entered a default against KBS on September 27, 2019. Doc. 123. (Default has not been entered against any of the other Defendants. *Id*.) Significantly, KBS has offered no objection to the entry of default against in this case.

In now moving for a default judgment, Henderson seeks damages for unpaid overtime compensation under the FLSA and recovery of deductions from his wages under Illinois and Indiana wage statutes. *See* doc. 133. Henderson, in support of his motion, presents detailed affidavits with supporting documentary evidence of his damages and the amount of attorney's fees and costs incurred in litigating this case. *See* docs. 133-1; 133-2; 133-3; 133-4. Specifically, Henderson estimates working an average of 50 hours per week over six days -- Monday through Saturday -- on an average of four jobs each day. Doc. 133-1 at PageID 3183-84. Further, Henderson estimates that his gross pay was, on average, $1,200.00, and that his net pay, after the deductions taken by KBS was, on average, $600.00 per week. *Id*. at PageID 3184.

---

[2] As a business entity, KBS cannot proceed *pro se* and can only participate in its defense in this case through counsel. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993).

    **A.**    **Damages Under the FLSA**

An employee seeking unpaid overtime or unpaid minimum wage under the FLSA bears the "burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). The Supreme Court has set forth a "proper and fair standard" in which an employee can "meet . . . his [or her] burden of proof." *Id*. at 687. "[A]n employee has carried out his [or her] burden if he [or she] proves that he [or she] has in fact performed work for which he [or she] was improperly compensated and if he [or she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. Thereafter, "[t]he burden . . . shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687-88. The employer's failure in this regard allows the court to "then award damages to the employee, even though the result be only approximate." *Id*. at 688.

Moreover, the FLSA allows for an employee seeking unpaid overtime or unpaid minimum to recover an equal amount as liquidated damages. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002). "[A]n award of liquidated damages is left to the sound discretion of the court…." *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971). However, for the court to invoke such discretion, the employer must come forward with evidence demonstrating that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Ellwell*, F.3d at 840 (citing 29 U.S.C. § 260 (1998)) (internal quotations omitted). The burden on the employer in this regard is substantial and requires "proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Id*. (emphasis in original). "In the absence of such

5

proof[,] a district [c]ourt has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *McClanahan*, 440 F.2d at 322.

In this case, Henderson seeks both compensatory and liquidated damages. *See* doc. 133. He approximates working 10 hours of unpaid overtime per week. *Id*. at PageID 3183. By taking his gross weekly pay ($1,200.00) and dividing it by the average number of hours (50) he claims to have worked weekly, he estimates his basic hourly rate to be $24 per hour. *See id*. at PageID 3183-84. Thus, Henderson's unpaid overtime rate would equal $12 per hour. *See Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 679 (S.D. Ohio 2015) (stating that where an employee's regular rate of pay is determined by dividing the weekly wage by the number of hours actually worked in a particular week, "the employer will owe [the employee] only one-half of the regular rate for those hours"). Multiplying that amount by Henderson's estimated 10 hours of uncompensated overtime per week equals $120 per week. Doc. 133 at PageID 3183. Taking that amount and multiplying it by Henderson's estimated 47 weeks of employment with Defendant KBS equals $5,460.00 in single damages. *Id*. Further, the FLSA provides for an award of liquidated damages equal to single damages, or $5,460.00, where, as here, KBS has failed to demonstrate good faith in failing to compensate Plaintiff for overtime hours worked. *See McClanahan*, 440 F.2d at 322. Accordingly, Henderson should be awarded his requested compensatory and liquidated damages of $11,280.00 (exclusive of attorney's fees and costs).

  **B.**  **Damages Under Illinois and Indiana Wage Statutes**

The purpose of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1, *et seq.*, is "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). Accordingly, the IWPCA imposes a variety of wage-related obligations on employers including, *inter alia*, prohibiting deductions from an

employees' wages. *See* 820 Ill. Comp. Stat. 115/3, 4, & 9; *see also Costello*, 810 F.3d at 1048. Specifically, employers are prohibited from doing so "unless the deductions are (1) required by law; [or] (2) to the benefit of the employee; [or] (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made." *Costello*, 810 F.3d at 1050 (citing 820 Ill. Comp. Stat. 115/9) (internal quotations omitted). The employer bears the burden of establishing the applicability of proving any exceptions under Section 9. 56 Ill. Admin. Code § 300.71.

Similarly, under Indiana's Wage Payment Act ("WPA"), Ind. Code § 22-2, *et seq.*, for a deduction to be lawful it "must be made for one of the purposes described in Ind. Code § 22–2–6–2(b), which includes items like paying insurance premiums or union dues, and purchasing shares of the employer's stock, but does not include reimbursement for property damage" or similar expenses. *E & L Rental Equip., Inc. v. Bresland*, 782 N.E.2d 1068, 1071 (Ind. Ct. App. 2003). Additionally, an agreement to deduct wages "must be in writing, signed by the employee, revocable at any time by the employee upon written notice to the employer, and agreed to in writing by the employer." *Id*. Much like under the IWPCA, the employer bears the burden of establishing the validity any deductions under the WPA. *GHPE Holdings, LLC v. Huxley*, 69 N.E.3d 513, 520 (Ind. Ct. App. 2017) (finding a defendant that failed to make "any argument or [cite] to authority or the record" waived its argument that "voluntary" deductions from a plaintiff's "wages were taken in accordance with [the WPA]").

Henderson attests that KBS automatically issued deductions for allegedly missing equipment and improperly completed jobs as well as for damage claims. Doc. 133 at PageID 3184. Henderson also estimates that KBS routinely deducted, on average, $600.00 per week. *Id*. Multiplying that amount by the 47 weeks Henderson was employed by KBS equals $28,200.00. *See id*. at PageID 3183. Because KBS has failed to establish that such deductions from

7

Henderson's wages were properly taken under either the IWPCA and/or the WPA, Henderson should be awarded his requested damages, or $28,200.00.

### C. Attorney's Fees and Costs

"An award of attorney fees to a prevailing plaintiff under…the FLSA is mandatory, but the amount of the award is within the discretion of the [Court]." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Similarly, the IWPCA and the WPA allow for the recovery of reasonable attorney's fees. *See White v. VNA Homecare, Inc.*, No. CIV. 11-971-GPM, 2012 WL 1435432, at *2 (S.D. Ill. Apr. 25, 2012) (stating that an employee shall recover all costs and attorney's fees "in a civil action [under the IPWCA]"); *GHPE Holdings, LLC*, 69 N.E.3d at 523 (stating that the WPA "provides for an award of reasonable attorney['s] fees to an employee" who is successful in his or her action). A party seeking attorneys' fees bears the burden of documenting his or her entitlement to such fees. *Reed v. Rhodes,* 179 F.3d 453, 472 (6th Cir.1999). The applicant should submit evidence supporting the hours worked and the rates claimed. *Id.*

"The primary concern in evaluating a request for attorney fees 'is that the fee award be reasonable.'" *Paschal v. Flagstar Bank, FSB,* 297 F.3d 431, 434 (6th Cir. 2002) (quoting *Reed,* 179 F.3d at 471). "A reasonable fee is one that is adequate to attract competent counsel but does not produce windfalls to attorneys." *Id.* "In determining a reasonable fee, the most useful starting point is to calculate the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate," which is known as the "lodestar" amount. *Id.* at 434. "There is generally a strong presumption that an attorney is entitled to her or his 'lodestar' fee." *Satterwhite v. Faurecia Exhaust Sys., Inc.*, No. 3:02-CV-574, 2005 WL 1279253, at *2 (S.D. Ohio May 31, 2005) (citing *Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). Although the court may, within limits, modify the "lodestar" to reflect considerations relevant to the specific litigation, such modifications are only proper in certain "rare" and "exceptional" cases, supported

by both "specific evidence" on the record and detailed findings by the court. *Adcock-Ladd,* 227 F.3d at 349 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986)).

Plaintiff's counsel represents a total of 143.6 hours worked by counsel and support staff (*i.e.,* paralegals) to interview individuals, investigate claims, file a complaint and amended complaint, attempt in-person service, conduct service by publication, and request default and an entry of default judgment. Doc. 133 at PageID 3179. The number of hours divided by the requested lodestar amount, or $56,507.05, results in an hourly rate of counsel and staff of $393.50 per hour. Docs. 133-2 at PageID 3188; 133-3 at PageID 3197; 133-4 at PageID 3221, 3227. In addition, counsel have testified via affidavit that such an hourly rate is reasonable; the work performed was necessary to successfully prosecute this matter; and the requested fee was adjusted so as not to reflect duplicative hours. (Regarding this last point, no evidence before the Court suggests otherwise.) *See* docs. 133-2 at PageID 3186-92, 133-3 at PageID 3194-218, and 133-4 at PageID 3220-32. Judges in this district have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions such as this. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011) (stating that "[a] district court may rely on a party's submissions, awards in analogous cases … and its own knowledge and experience in handling similar fee requests"); *see also Berry v. Fun Time Pool & Spa, Inc.*, No. 2:20-CV-1610, 2020 WL 4784654, at *2 (S.D. Ohio Aug. 18, 2020) (finding $445 per hour to be reasonable); *Rangel v. Paramount Heating & Air Conditioning, LLC.*, No. 2:17-CV-473, 2020 WL 1080418, at *2 (S.D. Ohio Mar. 6, 2020) (approving a $350 hourly fee); *see also Pineda v. Pit Columbus, LLC*, No. 2:17-CV-668, 2017 WL 5900559, at *4 (S.D. Ohio Nov. 28, 2017) ($450 hourly fee deemed reasonable); *Rembert v. A Plus Home Health Care Agency, LLC*, No. 2:17-CV-287, 2020 WL 1443041, at *2 (S.D. Ohio Mar. 25, 2020) (finding rates of $350 per hour and $300 per hour

reasonable for attorney's with 11 and 8 years' experience practicing labor and employment law, respectively). Accordingly, counsel's requested fee of $56,507.05 is deemed reasonable based upon the skill and experience of the attorneys and staff working on FLSA actions such as this, and counsel should be awarded the same. *See Fegley*, 19 F.3d at 1134 (finding that the Sixth Circuit has "upheld substantial awards of attorney's fees [in FLSA cases] even though a plaintiff recovered only nominal damages[]" because attorney fees in such cases "insure effective access to the judicial process" and "encourage the vindication of congressionally identified policies and rights"); *see also Brantingham v. Emergency Servs., Inc.*, No. 2:16-CV-1169, 2017 WL 5175866, at *1 (S.D. Ohio Nov. 8, 2017) (approving $35,112.50 in fees even though client was awarded only $13,168.63 in damages).

Further, Plaintiff's counsel represents incurring $1,745.85 in costs litigating this case. Docs. 133-2 at PageID 3188; 133-3 at PageID 3197; 133-4 at PageID 3221, 3227. Such costs are reasonable in light of the work performed here, and should also be awarded to counsel.

### III.

Based on the foregoing, the undersigned **RECOMMENDS** that: (1) Plaintiff Aunshawn Henderson's motion for a default judgment (doc. 133) be **GRANTED**; (2) judgment be **ENTERED** against Defendant Krieger Beard Services, LLC as follows: Plaintiff be **AWARDED** $39,280.00 in damages; and Plaintiff's counsel be **AWARDED** $56,507.05 in attorney's fees and $1,745.85 in costs; and (3) the Clerk **CLARIFY** that Henderson's claims (initially filed in Case No. 3:18-cv-006) are resolved, and thus no longer part of this litigation.

Date:  August 24, 2020            s/Michael J. Newman
                                  Michael J. Newman
                                  United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).